IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA
MINNEAPOLIS DIVISION

| | |
|---|---|
| Nyra Jean Miller-Fields, individually and as Personal Representative of the Estate of Ricky Cobb, II,<br><br>Plaintiff,<br><br>vs.<br><br>Ryan Londregan and Brett Seide,<br><br>Defendants. | **COMPLAINT**<br><br>C/A No: |

Plaintiff, Nyra Jean Miller-Fields, individually and as Personal Representative of the Estate of Ricky Cobb, II, by and through her undersigned counsel of record, brings this civil rights action pursuant to 42 U.S.C. § 1983 against Ryan Londregan and Brett Seide for excessive force and unlawful seizure resulting in the death of Ricky Cobb, II during a traffic stop on July 31, 2023.

## PARTIES

1. Plaintiff Nyra Jean Miller-Fields (hereinafter "Plaintiff") is a citizen and resident of Anoka County, Minnesota, and was appointed Personal Representative of the Estate of Ricky Cobb, II on November 30, 2023, by order of the Minnesota Fourth Judicial District, Probate Division, Case Number 27-PA-PR-23-1461.

2. At all times relevant to this Complaint, decedent Ricky Cobb, II (hereinafter "Decedent Cobb") was 33 years old, and a citizen and resident of Hennepin County, Minnesota.

3. Upon information and belief, Defendant Ryan Londregan (hereinafter "Defendant Londregan") is a citizen of Minnesota and resides in Ramsey County, Minnesota, and was employed as a trooper with the Minnesota State Patrol and was acting under color of state law at all times relevant to this complaint. He is being sued in his individual capacity.

4. Upon information and belief, Defendant Brett Seide (hereinafter "Defendant Seide") is a citizen of Minnesota and resides in Ramsey County, Minnesota, and was employed as a trooper with the Minnesota State Patrol and was acting under color of state law at all times relevant to this complaint. He is being sued in his individual capacity.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over the federal claims against Defendant Londregan and Defendant Seide pursuant to 28 U.S.C. § 1331 because those claims arise under federal law, 42 U.S.C. § 1983.

6. The Court further has personal jurisdiction over all Defendants as they are domiciled in this District and their acts and/or omissions complained of occurred within this District.

7. Venue is proper in the District of Minnesota, Minneapolis Division, pursuant to 28 U.S.C. § 1391(b)(1) & (2), as the acts or omissions complained of occurred within Hennepin County.

## FACTUAL ALLEGATIONS

8. On July 31, 2023, at 2:11:46 a.m., Defendant Londregan drove a marked squad car to the scene of a traffic stop along the shoulder of Interstate 94 in Minneapolis, Hennepin County, Minnesota.

9. At the scene were two additional Minnesota State Patrol troopers, Defendant Seide and a second trooper (hereinafter "Trooper Doe"), whose squad cars were parked behind a silver Ford Fusion driven by a single occupant, Decedent Cobb.

10. Defendant Seide was seated in his squad car and Trooper Doe was standing along the passenger side of the Ford Fusion, engaging in a conversation with Decedent Cobb.

2

11. Defendant Seide originally stopped Decedent Cobb twenty minutes earlier for driving at night without his lights on.

12. Upon information and belief, before Defendant Londregan arrived, Defendant Seide and Trooper Doe discussed the possibility of using "stop strips," which would have hindered Decedent Cobb from driving away, but they ultimately did not use the "stop strips."

13. After Defendant Londregan arrived on scene, Defendant Seide told him that Decedent Cobb was wanted for the violation of a protective order in Ramsey County, though there was no outstanding arrest warrant in that case.

14. As Defendant Seide and Defendant Londregan waited for officials from Ramsey County to confirm they wanted Decedent Cobb arrested, Trooper Doe continued his conversation with Decedent Cobb.

15. After some time, Trooper Doe walked back from Decedent Cobb's vehicle and told Defendant Londregan that he and the Decedent "get along" but that Decedent Cobb did not like Defendant Seide.

16. A short time later, Defendant Seide told Trooper Doe and Defendant Londregan that Ramsey County wanted Decedent Cobb arrested and brought to jail.

17. After a short discussion between the troopers, Defendant Seide approached the driver's side of Decedent Cobb's vehicle while Defendant Londregan approached the passenger side, and Trooper Doe positioned himself behind Defendant Seide near the rear of the vehicle.

18. At this point, Decedent Cobb's vehicle was in park with its doors locked and both front windows rolled down.

19. Defendant Seide told Decedent Cobb that he needed to step out of the vehicle because they had "some stuff to talk about [having to do with] Ramsey County" and Decedent Cobb responded by asking why he was being required to leave his vehicle.

20. Defendant Seide repeated that they had "stuff to talk about" and that Decedent Cobb needed to step out of the vehicle, but did not divulge a reason for ordering Decedent Cobb out of the vehicle.

21. Decedent Cobb asked Defendant Seide if there was a warrant for his arrest and Defendant Seide acknowledged that Decedent Cobb was not subject to a warrant for his arrest, but indicated that he would "explain it all when you get out of the car."

22. Defendant Seide thereafter asked Decedent Cobb to hand over his keys while Decedent Cobb repeated, "Why? Why?" and asked, "Can y'all keep it a buck with me, bro? Y'all pulled me over for my headlights."

23. Defendant Seide then responded, "Yep. We're way past that[,]" before telling Decedent Cobb to step out of the vehicle three more times.

24. Decedent Cobb asked "Where are we at though?", and said "When you say, step out of the vehicle [and] you gonna – explain it to me,' and then y'all say . . . ," before Defendant Seide interjected and stated for the first time, "This is now a lawful arrest."

25. Throughout the one-minute exchange, Decedent Cobb's hands were in the air in full view of the troopers, including Defendant Seide and Defendant Londregan, as he gestured while talking and his vehicle remained in park.

26. Decedent Cobb's hands were not touching the steering wheel or gear shifter, and he had not stepped on the brake.

27. Just as Defendant Seide told Decedent Cobb that he was under arrest, Defendant Londregan moved his hand into the inside of the passenger door, unlocked the vehicle's doors, and began opening the passenger-side door.

28. While Defendant Londregan was opening the door, Decedent Cobb placed his foot on the brake and moved his hand to the transmission shift and, when Defendant Londregan pulled the passenger door fully open, Decedent Cobb shifted the vehicle into drive and took his foot off the brake.

29. At this point, Defendant Seide grabbed the driver's side door handle and began opening the door while Decedent Cobb's vehicle began to slowly move several feet forward.

30. Both Defendant Seide and Defendant Londregan, who were fully outside of the vehicle, took steps forward to remain at the vehicle's side as Defendant Seide opened the driver's side door wider.

31. Defendant Seide then leaned his torso inside the vehicle and began to reach over Decedent Cobb toward his seatbelt, while Defendant Londregan remained on the passenger side and reached for his firearm.

32. At that moment, Decedent Cobb stepped on the brake, stopping the vehicle's forward movement and Defendant Londregan drew his firearm and pointed it directly at Decedent Cobb.

33. At the same time, Defendant Seide continued to lean his torso inside the vehicle over Decedent Cobb while Decedent Cobb kept his foot on the brake.

34. Defendant Londregan then opened the door to the car, leaned his torso inside the car, pointed his gun at Decedent Cobb's body, and loudly and aggressively yelled, "Get out of the car now!"

35. As Defendant Londregan said the word "car", Defendant Seide physically grabbed at Decedent Cobb and Decedent Cobb took his foot off the brake causing the vehicle to begin slowly moving forward. Within several tenths of a second after Defendant Londregan yelled the word "now," Defendant Londregan fired his handgun twice at Decedent Cobb's torso, striking Decedent Cobb both times.

36. After Decedent Cobb was shot, his vehicle increased its acceleration forward as Defendant Seide's torso remained inside the vehicle.

37. Defendant Seide and Defendant Londregan continued stepping forward to keep pace with Decedent Cobb's vehicle for six to ten (6-10) feet until they both lost their footing and fell to the ground.

38. Decedent Cobb's vehicle then proceeded down Interstate 94.

39. Defendant Seide and Defendant Londregan stood up and ran to their squad cars before driving after Decedent Cobb's vehicle, which had traveled approximately one-quarter mile down the interstate and came to a stop after colliding with a concrete median.

40. Defendant Seide then drove his squad car into Decedent Cobb's vehicle before the Defendants removed Decedent Cobb, assessed his gunshot wounds, and attempted life-saving measures without success.

41. Following the shooting, multiple law enforcement agencies and emergency medical services ("EMS") responded to the scene.

42. Upon information and belief, EMS pronounced Decedent Cobb dead at the scene.

43. An autopsy determined that Decedent Cobb's cause of death was "multiple gunshot wounds."

44. The medical examiner located two gunshot wounds, each of which passed through Decedent Cobb's torso, and the gunshots which caused Decedent Cobb's death were those fired by Defendant Londregan.

45. Agents from the Minnesota Bureau of Criminal Apprehension ("BCA") conducted an investigation into Decedent Cobb's death and interviewed those members of the Minnesota State Patrol who were willing to meet for voluntary interviews.

46. One such member was Defendant Seide, who acknowledged that by shooting Decedent Cobb, Defendant Londregan did not prevent Decedent Cobb's vehicle from moving forward and did not prevent Decedent Cobb's vehicle from dragging him briefly until he fell out of the vehicle onto the road.

47. BCA agents also attended an interview with the State Patrol's lead use-of-force trainer, who provided use-of-force training to Defendant Seide and Defendant Londregan.

48. The trainer was asked whether a reasonable officer would believe that pointing a gun at a fleeing driver and yelling at the driver to stop would cause the driver to stop, to which the trainer responded "No."

49. The trainer was further asked, "Would it be foreseeable to expect the exact opposite, meaning [the driver] would continue to leave?", to which the trainer responded, "That was probably his intention was to flee the area, so he's go[ing to] keep going in that direction away from me."

50. Pursuant to the policies of the Minnesota State Patrol, any use of a firearm is deadly force. *See* Minnesota State Patrol General Order # 23-10-027(CI)(E).

51. Pursuant to the policies of the Minnesota State Patrol, a firearm may be readied for use only in situations where it is reasonably anticipated that firearms may be required. *See* Minnesota State Patrol General Order #23-10-027(CI)(E).

52. The Minnesota State Patrol's policies further provide that members shall not shoot from or at a moving vehicle, except when deadly force is authorized, and that troopers should make every effort not to place themselves in a position that would increase the possibility that the vehicle they are approaching can be used as a deadly weapon against them or others. *See* Minnesota State Patrol General Order # 22-20-012(VIII).

53. On January 24, 2024, Defendant Londregan was charged in a Hennepin County criminal complaint with second-degree unintentional murder, first-degree assault, and second-degree manslaughter.

**FOR A FIRST CAUSE OF ACTION**
**(Unreasonable Seizure in Violation**
**of the Fourth and Fourteenth Amendments)**
**(*against Defendant Londregan and Defendant Seide*)**

54. Plaintiff repeats and realleges the factual allegations contained in Paragraphs 1-63 as if fully restated herein.

55. This is an action brought against Defendant Londregan and Defendant Seide in their individual capacities, pursuant to the Fourth Amendment to the United States Constitution as incorporated through the Fourteenth Amendment, for Defendants' violation of 42 U.S.C. § 1983.

56. At all times material hereto, Defendant Londregan and Defendant Seide were employees and/or agents of the Minnesota Department of Public Safety and the Minnesota State Patrol, and were acting within the course and scope of their employment, under color of state law, to wit, under color of the statutes, ordinances, regulations, policies, customs, and usages of the Minnesota Department of Public Safety and the Minnesota State Patrol.

8

57. As set forth in this complaint, on July 31, 2023, Defendant Londregan and Defendant Seide unreasonably seized Decedent Cobb, including:

   a. ordering Decedent Cobb to step out of the vehicle after pulling him over for a minor traffic violation under the false pretense that he had an active arrest warrant;

   b. ordering Decedent Cobb to step out of the vehicle while refusing to explain to him whether he was under arrest or the reason he was being detained;

   c. reaching into the car and grabbing Decedent Cobb's person while attempting to unbuckle his seatbelt to forcibly remove him from the car;

   d. opening Decedent Cobb's passenger door and leaning into the vehicle to forcibly remove him;

   e. drawing a deadly weapon on Decedent Cobb to seize him without probable cause when there was no indication he was posing any threat of danger to the officers;

   f. shooting the unarmed Decedent Cobb twice through the torso immediately after pulling a gun on him in order to seize him; and

   g. ramming Decedent Cobb's stopped vehicle while he was slumped in the driver's seat dying from gunshot wounds.

58. The series of seizures of Decedent Cobb by Defendant Londregan and Defendant Seide was objectively unreasonable in light of the facts and circumstances confronting them.

59. By the time of this incident, the laws prohibiting Defendant Londregan and Defendant Seide's unconstitutional seizure were clearly established under the United States Constitution.

60. Defendant Londregan and Defendant Seide knew or should have known, and every reasonable officer in their position would have concluded, that the force used to affect the seizure of Decedent Cobb was excessive, unjustifiable, and unlawful.

61. Defendant Londregan had actual knowledge that his acts of drawing his weapon on Decedent Cobb and shooting into Decedent Cobb's moving vehicle were in violation of policy, and both Defendants had actual knowledge that attempting to place parts of their bodies inside Decedent Cobb's moving vehicle was in violation of policy.

62. Neither Defendant Londregan nor Defendant Seide had reasonable suspicion that Decedent Cobb had committed any crime other than a protective order violation.

63. Neither Defendant Londregan nor Defendant Seide had reasonable suspicion that Decedent Cobb was armed or posed any threat of harm to them.

64. No additional underlying offense has ever been alleged against Decedent Cobb, and neither Defendant Londregan nor Defendant Seide had reasonable suspicion that Decedent Cobb was engaged in criminal activity or that he was armed and dangerous.

65. Defendant Londregan and Defendant Seide's conduct was objectively and subjectively unreasonable.

66. Defendant Londregan and Defendant Seide's unreasonable seizures of Decedent Cobb was the cause in fact and proximate cause of Decedent Cobb's injuries.

67. As a direct and proximate result of Defendant Londregan and Defendant Seide's acts, omissions, and unlawful seizures, Defendant Londregan and Defendant Seide deprived Decedent Cobb of the rights guaranteed to him by the Fourth Amendment of the United States Constitution, in particular, depriving him of the right to be free of unreasonable seizure.

68. As a direct and proximate result of Defendant Londregan and Defendant Seide's wrongful acts and omissions, Mr. Cobb's next of kin have suffered pecuniary loss, including medical and funeral expenses, loss of aid, counsel, guidance, advice, assistance, protection, and support in an amount to be determined by a jury.

69. Defendant Londregan and Defendant Seide are liable to Plaintiff for Decedent Cobb's injuries, pain and suffering, and death, and for the harm suffered by his estate.

**FOR A SECOND CAUSE OF ACTION**
**(Excessive Use of Force in Violation**
**of the Fourth and Fourteenth Amendments)**
**(*against Defendant Londregan and Defendant Seide*)**

70. Plaintiff repeats and realleges the factual allegations contained in Paragraphs 1-53 as if fully restated herein.

71. This action is brought against Defendant Londregan and Defendant Seide in their individual capacities, pursuant to the Fourth Amendment to the United States Constitution as incorporated through the Fourteenth Amendment, for Defendants' violations of 42 U.S.C. § 1983.

72. At all times material hereto, Defendant Londregan and Defendant Seide were employees and/or agents of the Minnesota Department of Public Safety and the Minnesota State Patrol, and were acting within the course and scope of their employment, under color of state law, to wit, under color of the statutes, ordinances, regulations, policies, customs, and usages of the Minnesota Department of Public Safety and the Minnesota State Patrol.

73. As set forth in this complaint, on July 31, 2023, Defendant Londregan and Defendant Seide used unnecessary, excessive, and deadly force on Decedent Cobb. The amount of force used by Defendant Londregan and Defendant Seide was objectively unreasonable in light of the facts and circumstances confronting them.

74. By the time of this incident, the laws prohibiting Defendants' unconstitutional use(s) of force were clearly established under the United States Constitution.

75. Defendant Londregan and Defendant Seide knew or should have known, and every reasonable officer in their position would have concluded, that the force used against Decedent Cobb was excessive, unjustifiable, and unlawful.

76. Defendant Londregan and Defendant Seide had actual knowledge that their uses of force against Decedent Cobb were in violation of policy.

77. At the time of this incident, Decedent Cobb was an unarmed man stopped for a minor traffic violation, had no outstanding warrants, and was not threatening or acting violently towards the officers on scene.  Nevertheless, Defendant Seide attempted to wrestle Decedent Cobb out of the vehicle, and Defendant Londregan drew his firearm on Decedent Cobb and shot him almost immediately, even with Defendant Seide positioned in a leaning posture over Decedent Cobb in his front seat.

78. Following the shooting, Decedent Cobb's vehicle traveled approximately one-quarter mile down the interstate before coming to a stop after colliding with a concrete median. Thereafter, despite the vehicle being stopped, Decedent Cobb's gunshot wounds, the lack of any threats against the troopers, and the lack of a weapon in the vehicle, Defendant Seide nevertheless rammed Decedent Cobb's vehicle with his squad car.

79. Upon information and belief, throughout the entire incident, neither Defendant Londregan nor Defendant Seide attempted a single de-escalation technique, and Defendant Londregan did not attempt to de-escalate before drawing his firearm and shooting Decedent Cobb.

80. Upon information and belief, neither Defendant Londregan nor Defendant Seide attempted to determine whether Decedent Cobb was armed or whether he posed any danger to

himself or others before Defendant Seide attempted to wrestle him out of the vehicle, Defendant Londregan drew his weapon on him and fired upon him, or before Defendant Seide rammed Decedent Cobb's stationary vehicle with his squad car.

81. Upon information and belief, at the time Decedent Cobb's vehicle initially started moving, Defendant Londregan and Defendant Seide were both outside of and beside Decedent Cobb's vehicle. However, Defendant Seide and Defendant Londregan made efforts to keep pace with the vehicle and place parts of their body in Decedent Cobb's vehicle which, upon information and belief, was in violation of the Minnesota State Patrol's policies.

82. Defendant Londregan and Defendant Seide's conduct was objectively and subjectively unreasonable.

83. Defendant Londregan and Defendant Seide's clear uses of excessive force was the cause in fact and proximate cause of Decedent Cobb's injuries.

84. As a direct and proximate result of Defendant Londregan and Defendant Seide's acts, omissions, and clear uses of excessive force, these Defendants deprived Decedent Cobb of the rights guaranteed to him by the Fourth and Fourteenth Amendments of the United States Constitution, in particular, depriving him of the right to be free of excessive force and of bodily integrity.

85. As a direct and proximate result of Defendant Londregan and Defendant Seide's wrongful acts and omissions, Mr. Cobb's next of kin have suffered pecuniary loss, including medical and funeral expenses, loss of aid, counsel, guidance, advice, assistance, protection, and support in an amount to be determined by a jury.

86. Defendant Londregan and Defendant Seide are liable to Plaintiff for Decedent Cobb's injuries, pain and suffering, and death, and for the harm suffered by his estate.

**JURY DEMAND**

**WHEREFORE**, Plaintiff demands a trial by jury and respectfully requests that this Court award the following damages against Defendants, as provided by federal law and the United States Constitution, including but not limited to the following:

a. Compensatory, actual, and consequential damages to Plaintiff;

b. Costs of this action and attorneys' fees to Plaintiff for the civil rights causes of action under 42 U.S.C. § 1988;

c. Loss of past and future support and services with interest;

d. Loss of earnings and/or earning capacity;

e. Punitive damages as to those causes of action where they are available; and

f. Such other and further relief as this Court may deem appropriate.

Respectfully submitted, this 17th day of April, 2024

/s/ F. Clayton Tyler
F. Clayton Tyler (MN Bar No. 11151X)
F. Clayton Tyler, P.A.
331 2nd Avenue S.
Minneapolis, MN 55401
T: (612) 333-7309
fctyler@fctyler.com

Bakari T. Sellers* (S.C. Bar No. 79714)
Mario A. Pacella* (S.C. Bar No. 68488)
Amy E. Willbanks* (S.C. Bar No. 69331)
Matthew B. Robins* (S.C. Bar No. 103685)
Strom Law Firm, LLC
6923 North Trenholm Road, Suite 200
Columbia, SC  29206
T: (803) 252-4800
bsellers@stromlaw.com
mpacella@stromlaw.com

awillbanks@stromlaw.com
mrobins@stromlaw.com


Harry M. Daniels* (GA Bar No. 234158)
The Law Offices of Harry M. Daniels, LLC
4571 Best Road, Ste 490
Atlanta, GA  30337
T: (678) 664-8529
daniels@harrymdaniels.com

*Pro Hac Vice Applications Forthcoming