UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Nyra Jean Miller-Fields, individually and as Personal Representative of the Estate of Ricky Cobb, II, | Court File No. 24-cv-01372 (NEB/DTS) |
| Plaintiff, | **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT BRETT SEIDE'S MOTION TO STAY PROCEEDINGS AND FOR AN EXTENSION OF TIME TO ANSWER** |
| vs. | |
| Ryan Londregan and Brett Seide, | |
| Defendants. | |

## INTRODUCTION

This civil rights lawsuit arises out of the death of Ricky Cobb, II, who died during a traffic stop. Defendant State Patrol Trooper Londregan is facing criminal charges stemming from that incident. *See State v. Londregan*, Case No. 27-CR-24-1844 (Henn Cnty. Ct.). Defendant State Patrol Trooper Brett Seide respectfully requests that this Court stay all proceedings in this matter until the conclusion of that criminal case. Trooper Seide's motion also seeks an extension of the time to answer or respond to the Complaint, until 30 days after the lifting of the stay, or 30 days after the Court denies this motion.

## PROCEDURAL BACKGROUND[1]

On January 24, 2024, a criminal complaint was filed against Trooper Londregan. (Kimble Dec. Ex. 1.) There are three counts: (1) second degree unintentional murder—while committing a felony; (2) first degree assault—great bodily harm; (3) second degree

---

[1] The factual allegations cited herein are from the criminal complaint and the Complaint in this matter. The allegations are cited herein so that the Court can evaluate the similarity of the matters. Trooper Seide does not admit any of the allegations in either complaint.

manslaughter—culpable negligence creating unreasonable risk. (*Id.*) The maximum sentence for Count 1 is 40 years. (*Id.*) According to the criminal complaint, at around 2:11 a.m. on July 31, 2023, State Trooper Londregan arrived at the scene of a traffic stop. (*Id.* page 3.) Mr. Cobb had been stopped for driving at night without his lights on. (*Id.*) Trooper Seide told Trooper Londregan that Mr. Cobb was wanted for violating a protective order in Ramsey County, and that Ramsey County wanted Mr. Cobb arrested and brough to jail. (*Id.*)

Trooper Seide walked to the driver side of Mr. Cobb's vehicle and Trooper Londregan walked to the passenger door. (*Id.*) Trooper Seide told Mr. Cobb he needed to step out of the vehicle; Mr. Cobb asked if there was a warrant for his arrest and was told there was not. (*Id.*)

Trooper Seide asked Mr. Cobb to hand over his keys and repeated three more times that Mr. Cobb should step out of the vehicle. (*Id.*) Trooper Seide informed Mr. Cobb that he was under arrest. (*Id.* at page 4.)

According to the criminal complaint, the following occurred over the course of approximately five seconds: Trooper Seide and Trooper Londregan opened the drivers and passenger side doors and leaned into the vehicle, while Mr. Cobb put the car into gear and allowed it to move forward, but then stopped it. (*Id.*) Trooper Londregan pulled his firearm and pointed it at Mr. Cobb and told him to get out of the car. (*Id.*) Trooper Seide leaned over Mr. Cobb's torso and grabbed him; Mr. Cobb removed his foot from the brake and the car began to move forward. (*Id.*) As the car was moving forward, Trooper Londregan discharged his firearm two times, striking Mr. Cobb. (*Id.*)

2

Mr. Cobb's vehicle sped up, Troopers Seide and Londregan lost their footing and fell, and the vehicle proceeded down I-94.  (*Id.*)  Troopers Seide and Londregan drove to Mr. Cobb's vehicle, which had traveled about a quarter mile down the road and collided with a concrete median.  (*Id.* at page 5.)  Trooper Seide drove his squad car into Mr. Cobb's vehicle to confirm it was stopped.  (*Id.*)  Life-saving efforts were not successful, and Mr. Cobb died.  (*Id.*)

On April 17, 2024, Plaintiff filed this lawsuit against Troopers Seide and Londregan. Plaintiff brings two claims:  unlawful seizure and excessive force.  The factual allegations in the Complaint mirror those in the criminal complaint.  (*See* ECF No. 1 ¶¶ 8-40 (discussing the stop and Trooper Londregan discharging his firearm).)  Indeed, there are almost no factual allegations in the Complaint that are not also in the criminal complaint. The criminal matter is ongoing.  An omnibus hearing is scheduled to take place on April 29, 2024.

## ARGUMENT

**I.   THE COURT HAS AUTHORITY TO STAY ALL PROCEEDINGS, PENDING RESOLUTION OF THE CRIMINAL MATTER.**

"A federal district court has the inherent power to stay the proceedings of an action, so as to control its docket, to conserve judicial resources, and to provide for the just determination of cases which pend before it."  *Ruszczyk v. Noor*, 349 F. Supp. 3d 754, 759 (D. Minn. 2018) (internal quotations and alterations omitted).  A "'stay of a civil trial until factually related criminal proceedings are concluded is sometimes warranted.'"  *Id.* (quoting *Koester v. Am. Republic Invs., Inc.*, 11 F.3d 818, 823 (8th Cir. 1993)).

3

Such stays are routinely granted where factually related criminal proceedings are taking place concurrently. *See, e.g.*, *Ruszczyk*, 349 F. Supp. 3d at 759–60; *see also United States v. Caring & Compassionate Health Care Agency, L.L.C.*, No. 15-CV-2098 (DSD/TNL), 2020 WL 7383523, at *2 (D. Minn. Dec. 15, 2020); *Peden v. United States*, 512 F.2d 1099, 1103 (Ct. Cl. 1975) ("[I]t has long been the practice to 'freeze' civil proceedings when a criminal prosecution involving the same facts is warming up or under way."); *Estes-El v. Long Island Jewish Med. Ctr.*, 916 F. Supp. 268, 269 (S.D.N.Y. 1995) ("It is well-settled that the Court may (and indeed, should) stay a federal Section 1983 action until resolution of parallel state court criminal proceedings."). Indeed, "the strongest case for deferring civil proceedings until after completion of criminal proceedings is where a party under indictment for a serious offense is required to defend a civil or administrative action involving the same matter." *S.E.C. v. Dresser Indus., Inc.*, 628 F.2d 1368, 1375-76 (D.C. Cir. 1980).

To warrant such a stay, the defendant "must make a strong showing either that the two proceedings are so interrelated that he cannot protect himself at the civil trial by selectively invoking his Fifth Amendment privilege, or that the two trials will so overlap that effective defense of both is impossible." *Koester*, 11 F.3d at 823 (internal citation omitted). "'In making this determination, a Court must consider the particular circumstances, and the competing interests, that are involved in each case.'" *Ruszczyk*, 349 F. Supp. 3d at 759 (quoting *Fid. Nat'l Title Ins. Co. of New York v. Nat'l Title Res. Corp.*, 980 F. Supp. 1022, 1024 (D. Minn. 1997), citing in turn *Fed. Sav. and Loan Ins. Corp. v. Molinaro*, 889 F.2d 899, 901 (9th Cir. 1989)).

4

In addition to the Fifth Amendment rights outlined in *Koester*, the Court may consider the following five factors in deciding whether to stay a civil case, pending resolution of a parallel criminal matter:

> (1) the interest of the plaintiffs in proceeding expeditiously with this litigation or any particular aspect of it, and the potential prejudice to plaintiffs of a delay; (2) the burden which any particular aspect of the proceedings may impose on defendants; (3) the convenience of the court in the management of its cases, and the efficient use of judicial resources; (4) the interests of persons not parties to the civil litigation; and (5) the interest of the public in the pending civil and criminal litigation.

*Ruszczyk*, 349 F. Supp. 3d at 759 (quoting *Fid. Nat'l Title Ins. Co. of New York*, 980 F. Supp. at 1024, quoting in turn *Keating v. Office of Thrift Supervision*, 45 F.3d 322, 324-25 (9th Cir. 1995)).

It is immaterial that Trooper Seide is not also a criminal defendant. He will have to testify under oath in the criminal trial and the evidence relevant to Plaintiff's claims against Trooper Seide is the same evidence that is relevant to the criminal trial. *See Chagolla v. City of Chicago*, 529 F. Supp. 2d 941, 943 (N.D. Ill. 2008) (staying the civil rights lawsuit against all eight defendants, where four of the officers had been indicted in connection with the underlying circumstances); *see also Trustees of Plumbers & Pipefitters Nat. Pension Fund v. Transworld Mech., Inc.*, 886 F. Supp. 1134, 1141 (S.D.N.Y. 1995) (concluding a complete stay as to all defendants was more efficient than a partial stay). Both matters cannot proceed at the same time.

### A.   A Stay Is Warranted under the Five Factors Outlined in *Keating*.

As set forth below, the relevant *Keating* factors weigh in favor of granting Trooper Seide's motion to stay these proceedings.

5

1. **The Plaintiff's interest and the prejudice of delay.**

Plaintiff may argue she wants information and evidence relevant to her claims. But given the active law enforcement investigation into this matter and criminal prosecution, the information she seeks is confidential under Minnesota law and is currently unavailable even to Trooper Seide. *See* Minn. Stat. § 13.82, subd. 7.

Given the substantial overlap between the civil proceeding and criminal investigation, there should be no concern that relevant evidence will be lost or made unavailable if this matter were stayed. The evidence collected in the BCA investigation will be preserved and eventually available in this civil suit. There is no articulable prejudice to Plaintiff with respect to evidentiary concerns should this matter be stayed. On the other hand, a review of the remaining *Keating* factors demonstrates that moving forward with civil litigation at this early stage would result in significant burden and prejudice to the Defendants. *See Ruszczyk*, 349 F. Supp. 3d at 760.

2. **Burden on Trooper Seide.**

Proceeding with a civil rights litigation while a related criminal case proceeds disadvantages Trooper Seide because he does not have access to information critical to his defense. Under Minnesota law, nearly all criminal investigative data collected or created by a law enforcement agency to prepare a case against a person for the commission of a crime is confidential or protected nonpublic data while the investigation is active. Minn. Stat. § 13.82, subd. 7. That information becomes public in one of four ways: (1) following a decision by the appropriate prosecutorial authority not to pursue the case; (2) upon expiration of the time to bring a charge or 30 years, whichever is earliest; (3) upon the

6

exhaustion of all appeal rights by the person convicted; or (4) after presentation of investigative data as evidence in Court. *Id.* Additionally, if Trooper Londregan asserts the Fifth Amendment in the civil matter, it will confound Trooper Seide's "discovery efforts in defense of the civil litigation." *United States v. All Meat & Poultry Prod.*, No. 02 C 5145, 2003 WL 22284318, at *4 (N.D. Ill. Oct. 3, 2003).

### 3. Convenience of the Court.

Because the criminal case is proceeding, a stay in the civil case can "promote efficiency and avoid duplication as this Court and the parties would have the benefit of the transcripts and rulings in the criminal action." *Crawford & Sons, Ltd. v. Besser*, 298 F. Supp. 2d 317, 319 (E.D.N.Y. 2004). Further, "the resolution of the criminal case might reduce the scope of discovery in th[is] civil case or otherwise simplify the issues." *Brock v. Tolkow*, 109 F.R.D. 116, 120 (E.D.N.Y. 1985) (citing *Texaco, Inc. v. Borda*, 383 F.2d 607, 609 (3d Cir. 1967)); *Crawford & Sons, Ltd.*, 298 F. Supp. 2d at 320 (noting that "a conviction or acquittal in the criminal action may negate or buttress some or all of the plaintiffs' claims"). A stay would undoubtedly prevent the need for the Court to adjudicate several privilege issues. *See All Meat & Poultry Prods.*, 2003 WL 22284318, at *5.

To reduce any case management burden of a stay, a court can "require[e] the parties to advise the Court on any development in the criminal case." *Chao v. Fleming*, 498 F. Supp. 2d 1034, 1040 (W.D. Mich. 2007). Here, Trooper Seide proposes that the stay remain in place until the criminal case against Trooper Londregan is resolved, either by dismissal, a verdict of not guilty, or sentencing after a plea of guilty or guilty verdict. Within seven days of that event, Trooper Seide will submit a status update which will

enable the Court to make an informed decision as to whether to continue, modify, or end the stay.

### 4. Interests of nonparties.

Trooper Seide is unaware of any third parties who have a unique interest in the progression of this civil case now, before the resolution of the criminal matter.

### 5. The public interest.

The public "has an interest in ensuring that the criminal process can proceed untainted by civil litigation." *Chagolla*, 529 F. Supp. 2d at 947; *Jones v. City of Indianapolis*, 216 F.R.D. 440, 452 (S.D. Ind. 2003) ("The public also has an important interest in a potential, untainted criminal prosecution that could arise from [a] death."). To that end, the criminal proceeding should be allowed to continue without the risk of publicity about any civil case. Filings in the civil case could be publicized and could affect potential jurors.

The public has an interest in avoiding the "possibility that the orderly progress of the criminal cases and investigations—particularly those involving the exact same incidents at issue in the present case—will be hindered by issues that could arise from ongoing civil discovery." *Chagolla*, 529 F. Supp. 2d at 947. Where these two public interests collide, and in the current procedural postures of the respective criminal and civil cases, this "civil case, which carries only civil [remedies], is not of an equally pressing nature" as the criminal case proceeding against Trooper Londregan. *See S.E.C. v. Nicholas*, 569 F. Supp. 2d 1065, 1072–73 (C.D. Cal. 2008); *State Farm Automobile Ins. Co. v. Healthcare Chiropractic Clinic, Inc.*, No. 15-cv-1527, 2016 WL 9307608, at *6 (D. Minn.

Apr. 26, 2016) ("Courts around the country have recognized that 'the public's interest in the integrity of the criminal case is entitled to precedence over the civil litigant.'") (quoting *Javier H. v. Garcia-Botello*, 218 F.R.D. 72, 75 (W.D.N.Y. 2003)).

Further, there is also "an important public interest in having . . . issue[s] decided on the basis of a full factual record." *Edwards v. Atrium Vill.*, 127 F.R.D. 494, 499 (N.D. Ill. 1989). Here, where the factual record will be limited due to the invocation of the Fifth Amendment and lack of access to the BCA file, a stay is warranted.

### B. A stay is also warranted based on the Fifth Amendment interests outlined in *Koester*.

"Any individual defendant who is forced to respond to discovery will be faced with the choice of whether to claim or waive the privilege against self-incrimination." *Chagolla*, 529 F. Supp. 2d at 947. This discovery may also "expose the basis of the defendant['s] criminal defense in advance of trial," *Crawford & Sons, Ltd.*, 298 F. Supp. 2d at 319, which further burdens a criminal defendant's strategies and tactics. An individual defendant has an interest "in avoiding the quandary of choosing between waiving [his] Fifth Amendment rights or effectively forfeiting the civil case," particularly where the subject matter of the criminal and civil cases so significantly overlaps. *Trustees of Plumbers & Pipefitters Nat. Pension Fund*, 886 F. Supp. at 1140.

Trooper Londregan undoubtedly has Fifth Amendment interests at stake and Trooper Seide may as well. Absent a stay, the Defendants would be forced to choose between defending themselves in an actual or potential criminal prosecution or this civil

9

lawsuit. The Defendants should not be forced to choose between their Fifth Amendment rights or effectively forfeiting this lawsuit. *See Ruszczyk*, 349 F. Supp. 3d at 762.

## II. THE COURT SHOULD GRANT AN EXTENSION OF THE TIME TO ANSWER OR RESPOND TO THE COMPLAINT.

If the Court finds that the circumstances of this case warrant a stay until the criminal case concludes, then Trooper Seide respectfully requests an extension of time to answer or respond to the Complaint, until 30 days after the stay is lifted. Alternatively, even if the Court determines that a stay is not warranted, Trooper Seide respectfully requests a 30-day extension of the time to answer or respond, from the date that the Court issues its order on Trooper Seide's motion for a stay and extension.[2]

Under Rule 6(b)(1) of the Federal Rules of Civil Procedure, "[w]hen an act may or must be done within a specified time, the court may, for good cause, extend the time[.]" When a motion for extension is made before the expiration of the original deadline, the motion is "to be liberally permitted . . . 'to secure the just, speedy, and inexpensive determination of every action.'" *Baden v. Craig-Hallum, Inc.*, 115 F.R.D. 582, 585 (D. Minn. 1987) (quoting Fed. R. Civ. P. 1); *see also Seifert v. IMT Ins. Co.*, Civ. No. 20-1102 (JRT/DTS), 2021 WL 2228158, at *2 n.3 (D. Minn. June 2, 2021) (A "request will normally be granted absent bad faith or prejudice") (citing 4B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1165 (4th ed.)).

---

[2] Plaintiff opposes Trooper Seide's motion to stay. But Plaintiff does not oppose Trooper Seide's request for an extension of time to answer.

10

Good cause exists to grant Trooper Seide an extension of time to answer or otherwise respond to the Complaint until 30 days after the lifting of any stay in this matter, or until 30 days after the Court issues its order on the current motion.

## CONCLUSION

For the reasons stated herein, Trooper Seide respectfully asks that this Court stay the current Action, until the criminal case against Trooper Londregan is resolved, either by dismissal, a verdict of not guilty, or sentencing after a plea of guilty or guilty verdict; Trooper Seide also respectfully asks this Court for an extension of time to answer the Complaint.

Dated: April 25, 2024                     Respectfully submitted,

                                          KEITH ELLISON
                                          Attorney General
                                          State of Minnesota

                                          s/ **Janine Kimble**
                                          JANINE KIMBLE (#0392032)
                                          ANNA VEIT-CARTER (#0392518)
                                          Assistant Attorneys General

                                          445 Minnesota Street, Suite 1400
                                          St. Paul, Minnesota 55101-2131
                                          (651) 757-1415 (Voice)
                                          (651) 297-7206 (TTY)
                                          janine.kimble@ag.state.mn.us

                                          ATTORNEYS FOR DEFENDANT
                                          BRETT SEIDE

|#5763094-v1