Filed in District Court
State of Minnesota
Jan 24, 2024 11:24 am

| | |
|---|---|
| STATE OF MINNESOTA<br>COUNTY OF HENNEPIN | DISTRICT COURT<br>FOURTH JUDICIAL DISTRICT<br>27-CR-24-1844<br>COURT FILE NO.<br>PROSECUTOR CASE NO. 23A11299<br>SILS ID. 931758<br>SILS TRACKING. 3377270<br>CONTROLLING AGENCY. MNBCA0000<br>CONTROL NO. 23000724 |
| State of Minnesota,<br><br>        Plaintiff,<br><br>v.<br><br>**RYAN PATRICK LONDREGAN (DOB: 08/10/1996)**<br>c/o Wold Morrison Law<br>331 2nd Ave S<br>Minneapolis, MN  55401,<br>        Defendant. | **CRIMINAL COMPLAINT**<br><br>☒ Summons   ☐ Warrant<br>☐ Order of Detention<br><br>☐ Amended<br>☐ Tab Charge Previously Filed |

The Complainant, being duly sworn, makes complaint to the above-named Court and states that there is probable cause to believe that Defendant committed the following offense(s):

### Count I
Charge: **Murder - 2nd Degree - Without Intent - While Committing a Felony**
Minnesota Statute: **609.19.2(1)**, with reference to: 609.19.2(1), 609.11.5(a)
Offense Level: **Felony**
Maximum Sentence: **40 YEARS**
Offense Date (on or about): **07/31/2023**
Charge Description: That on or about July 31, 2023, in Minneapolis, Hennepin County, Minnesota, RYAN LONDREGAN did cause the death of Victim, a human being, while committing or attempting to commit the felony offense of Assault in the Second Degree while using a firearm.

### Count II
Charge: **Assault-1st Degree-Great Bodily Harm**
Minnesota Statute: **609.221.1**, with reference to: 609.11.5(a), 609.101.2, 609.221.1
Offense Level: **Felony**
Maximum Sentence: **20 YEARS AND/OR $30,000**
Offense Date (on or about): **07/31/2023**
Charge Description: That on or about July 31, 2023, in Minneapolis, Hennepin County, Minnesota, RYAN LONDREGAN assaulted Victim and inflicted great bodily harm while using

Kimble Decl., Exhibit 1, page 1

a firearm.

### Count III

Charge: **Manslaughter - 2nd Degree - Culpable Negligence Creating Unreasonable Risk**
Minnesota Statute: **609.205(1)**, with reference to: 609.205
Offense Level: **Felony**
Maximum Sentence: **10 YEARS AND/OR $20,000**
Offense Date (on or about): **07/31/2023**
Charge Description: That on or about July 31, 2023, in Minneapolis, Hennepin County, Minnesota, RYAN LONDREGAN caused the death of Victim by his culpable negligence whereby RYAN LONDREGAN created an unreasonable risk and consciously took a chance of causing death or great bodily harm to Victim.

## STATEMENT OF PROBABLE CAUSE

The Complainant states that the following facts establish probable cause:

Complainant has investigated the facts and circumstances of this offense and believes the following establishes probable cause:

On July 31, 2023, at 2:11:46 AM, Minnesota State Patrol Trooper Ryan Londregan, described here as "the Defendant," drove a marked squad car to the scene of a traffic stop along the shoulder of Interstate 94 in Minneapolis, Hennepin County, Minnesota. At the scene, there were two other troopers, Trooper A and Trooper B, whose squad cars were parked behind a silver Ford Fusion driven by a single occupant, identified here as "the Victim." Trooper A was seated in his squad car. Trooper B was standing along the passenger side of the Fusion, engaging in conversation with the Victim. The Victim had been stopped because he was driving at night without his lights on. The initial stop occurred approximately twenty minutes before Londregan arrived.

After the Defendant arrived at the scene, Trooper A told him that the Victim was wanted for violation of a protective order in Ramsey County, though there was no arrest warrant outstanding in that case. As Trooper A and the Defendant waited for officials from Ramsey County to confirm they wanted the Victim arrested, Trooper B continued his conversation with the Victim. At 2:14:00 AM, Trooper B walked back from the Victim's vehicle and told Defendant that he and the Victim "get along" but that the Victim did not like Trooper A.

The conversation between Trooper A and Trooper B before Londregan's arrival included a discussion of possibly using "stop strips," which would have hindered the Victim from driving away. Stop strips were not used.

At 2:15:14 AM, Trooper A told Trooper B and the Defendant that Ramsey County wanted the Victim arrested and brought to jail. After a brief discussion between the troopers, Trooper A approached the driver's side of the Victim's vehicle, and the Defendant approached the vehicle's passenger door. Trooper B positioned himself behind Trooper A near the rear of the vehicle. The Victim's vehicle was in park with its doors locked and with its front windows rolled down.

At 2:15:45 AM, Trooper A told the Victim that he needed to step out of the vehicle because they had "some stuff to talk about [having to do with] Ramsey County." The Victim asked why he was being required to leave the car. Trooper A repeated that they had "stuff to talk about" and that the Victim needed to step out of the vehicle, without divulging a reason. The Victim asked Trooper A whether there was a warrant for his arrest. Trooper A acknowledged that the Victim was not subject to a warrant and that Trooper A would "explain it all out when you get out of the car."

Soon after, Trooper A asked the Victim to hand over his keys while the Victim repeated, "Why? Why?" The Victim then asked, "Can y'all keep it a buck with me, bro? Y'all pulled me over for my headlights." Trooper A responded, "Yep. We're way past that." Trooper A told the Victim to step out of the vehicle three more times, and the Victim asked "Where we at though?" and

said "When you say, 'Step out of the vehicle [and] you gonna – explain it to me,' and then y'all say…" Trooper A interjected by stating for the first time, "This is now a lawful arrest."

Throughout this one-minute exchange, the Victim's hands were in the air as he gestured while talking, and the vehicle remained in park. The Victim's hands were not touching the steering wheel or gear shifter, and Victim had not stepped on the brake.

At 2:16:57 AM, just as Trooper A told the Victim that he was under arrest, the Defendant moved his hand into the inside of the passenger door of the Victim's car and unlocked the vehicle's doors. This movement attracted the Victim's attention, and the Victim turned his head and looked over to the Defendant on the passenger side.

At 2:16:58 AM, the Defendant began opening the passenger-side door. While the door was opening, the Victim placed his foot on the brake and moved his hand to the transmission shift.

At 2:16:59 AM, the Defendant pulled the passenger door fully open, and the Victim shifted the vehicle into drive and took his foot off the brake. Trooper A grabbed the driver's side door handle and began opening the door.

At. 2:17:00 AM, the Victim's vehicle began to slowly move several feet forward, as the Victim's foot was off the brake. Both the Defendant and Trooper A took steps forward to remain at the vehicle's side as Trooper A opened the driver's side door wider. At that moment, the Defendant and Trooper A were fully outside of the vehicle.

At 2:17:01 AM, Trooper A leaned down and began to reach into the Victim's driver's door. The Defendant remained on the passenger side and reached for his firearm on the right side of his duty belt.

At 2:17:02 AM, Trooper A leaned his torso into the vehicle and began reaching over the Victim's body toward the Victim's seatbelt. At that moment, the Victim stepped on the brake, stopping the vehicle's forward movement. The Defendant pulled his firearm from his duty belt and pointed it directly at the Victim.

At 2:17:03 AM, Trooper A continued to lean his torso into the vehicle over the Victim's body, while the Victim kept his foot on the brake. At this moment, the Defendant continued to point his firearm directly at the Victim, and the Defendant loudly and aggressively yelled, "Get out of the car now!" As Defendant uttered the word, "car" and Trooper A physically grabbed at the Victim, the Victim took his foot off the brake and the vehicle began to move slowly forward.

At 2:17:04 AM, within several tenths of a second after the Defendant yelled the word "now," the Defendant fired his handgun twice at the Victim's torso, striking the Victim both times. After the Victim was shot, the Victim's vehicle increased its acceleration forward as Trooper A's torso remained inside the vehicle. Trooper A and the Defendant continued stepping forward to keep pace with Victim's vehicle for 6-10 feet until they both lost their footing and fell to the ground. Victim's vehicle then proceeded down Interstate 94.

Kimble Decl., Exhibit 1, page 4

At 2:17:07, Trooper A and the Defendant stood up. They then ran to their squad cars and drove after the Victim's vehicle. By that time, the Victim's vehicle had traveled approximately a quarter-mile down the road and collided with a concrete median. Trooper A drove his squad into the Victim's vehicle to confirm it was stopped. The troopers then pulled the Victim out of the vehicle, assessed his gunshot wounds, and attempted life-saving measures without success.

Multiple law enforcement agencies and EMS responded to the scene. EMS pronounced the Victim dead at the scene. A subsequent autopsy determined that the cause of Victim's death was "multiple gunshot wounds." The medical examiner located two gunshot wounds, each of which passed through the Victim's torso. The gunshot wounds which caused the death were those fired by the Defendant.

Agents from Minnesota Bureau of Criminal Apprehension (BCA) conducted an investigation into the Victim's death. Investigators also interviewed those members of the State Patrol who were willing to meet for voluntary interviews, including Trooper A, who acknowledged that by shooting the Victim, the Defendant did not prevent the Victim's vehicle from moving forward and did not prevent the Victim's vehicle from dragging him briefly until he fell out of the vehicle and onto the road.

BCA agents attended an interview with the State Patrol's lead use-of-force trainer, Trainer A, who provided use-of-force training to the Defendant and Trooper A. Trainer A was asked whether a reasonable officer would believe that pointing a gun at a fleeing driver and yelling at the driver to stop would cause the driver to stop. Trainer A said, "No." Trainer A was asked, "Would it be foreseeable to expect the exact opposite, meaning [the driver] would continue to leave?" Trainer A responded, "That was probably his intention was to flee the area, so he's gonna keep going in that direction away from me."

Under State Patrol policy, any use of a firearm is deadly force. A firearm may be readied for use only in situations where it is reasonably anticipated that firearms may be required. State Patrol policy also states that members shall not shoot from or at a moving vehicle, except when deadly force is authorized, and that troopers should make every effort not to place themselves in a position that would increase the possibility that the vehicle they are approaching can be used as a deadly weapon against them or others.

Complainant requests that Defendant, subject to bail or conditions of release, be:
(1) arrested or that other lawful steps be taken to obtain Defendant's appearance in court; or
(2) detained, if already in custody, pending further proceedings; and that said Defendant otherwise be dealt with according to law.

**COMPLAINANT'S NAME:** Thomas Roth

**COMPLAINANT'S SIGNATURE:** TR 1317

Subscribed and sworn to before the undersigned this 24 day of JANUARY, 2024. @0918

**NAME/TITLE:** Senior Admin Assistant

**SIGNATURE:** Paula Ann Mahnke Breuer

---

Being authorized to prosecute the offenses charged, I approve this complaint.

Date: 1/24/24

PAULA ANN MAHNKE BREUER
NOTARY PUBLIC – MINNESOTA
My Commission Expires Jan. 31, 2025
Commission #20286996

**PROSECUTING ATTORNEY'S SIGNATURE:**
Noah W. Bolen for
AR# 0403225

Name: Mary Moriarty
~~Assistant~~ County Attorney

Minneapolis, MN

Attorney Registration # 0203567

## FINDING OF PROBABLE CAUSE

From the above sworn facts, and any supporting affidavits or supplemental sworn testimony, I, the Issuing Officer, have determined that probable cause exists to support, subject to bail or conditions of release where applicable, Defendant's arrest or other lawful steps be taken to obtain Defendant's appearance in court, or Defendant's detention, if already in custody, pending further proceedings. Defendant is therefore charged with the above-stated offense.

☒ **SUMMONS**

THEREFORE YOU, THE ABOVE-NAMED DEFENDANT, ARE HEREBY SUMMONED to appear on the ___ day of _____, 20___ at _____ a.m./p.m. before the above-named court at _____ _____ to answer this complaint.

IF YOU FAIL TO APPEAR in response to this SUMMONS, a WARRANT FOR YOUR ARREST shall be issued.

☐ **WARRANT**

To the Sheriff of the above-named county; or other person authorized to execute this warrant: I hereby order, in the name of the State of Minnesota, that the above-named Defendant be apprehended and arrested without delay and brought promptly before the above-named court (if in session), and if not, before a Judge or Judicial Officer of such court without unnecessary delay, and in any event not later than 36 hours after the arrest or as soon as such Judge or Judicial Officer is available to be dealt with according to law.

☐ *Execute in MN Only*    ☐ *Execute Nationwide*    ☐ *Execute in Border States*

☐ **ORDER OF DETENTION**

Since the above-named Defendant is already in custody, I hereby order, subject to bail or conditions of release, that the above-named Defendant continue to be detained pending further proceedings.

Bail:              $
Conditions of Release:

This complaint, duly subscribed and sworn to, is issued by the undersigned Judicial Officer this _24_ day of _January_, 20_24_.

JUDICIAL OFFICER:
NAME: TAMARA GARCIA
TITLE: JUDGE OF DISTRICT COURT

SIGNATURE: _____

Sworn testimony has been given before the Judicial Officer by the following witnesses:

| COUNTY OF HENNEPIN<br>STATE OF MINNESOTA<br><br>**STATE OF MINNESOTA**<br>Plaintiff,<br>vs.<br>Ryan Patrick Londregan,<br>Defendant | Clerk's Signature or File Stamp:<br><br><br>RETURN OF SERVICE<br>*I hereby Certify and Return that I have served a copy of this COMPLAINT upon Defendant herein named.*<br>Signature of Authorized Service Agent:<br><br>_____ |

Kimble Decl., Exhibit 1, page 7