### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MINNESOTA
### MINNEAPOLIS DIVISION

| | | |
|---|---|---|
| Nyra Jean Miller-Fields, individually and as Personal Representative of the Estate of Ricky Cobb, II, | ) ) ) | |
| Plaintiff, | ) ) | C/A No. 24-cv-01372-NEB-DTS |
| vs. | ) ) ) | **MEMORANDUM IN OPPOSITION TO DEFENDANT SEIDE'S MOTION TO STAY PROCEEDINGS AND FOR AN EXTENSION OF TIME TO ANSWER** |
| Ryan Londregan and Brett Seide, | ) ) | |
| Defendants. | ) ) ) | |

### INTRODUCTION

This civil rights action arises out of the death of Ricky Cobb, II, who was shot and killed during a traffic stop involving Defendant Ryan Londregan (hereinafter "Defendant Londregan") and Defendant Brett Seide (hereinafter "Defendant Seide"). Defendant Londregan is currently facing criminal charges as a result of the incident. *See State v. Londregan*, Case No. 27-CR-24-1844 (Henn. Cty. Ct.). Defendant Seide now moves this Court to stay all proceedings in this matter until the conclusion of Defendant Londregan's criminal case. Defendant Seide also seeks an extension of time to answer or respond to Plaintiff's Compliant. Plaintiff respectfully asserts that this Court should deny Defendant Seide's request for a stay.

### BACKGROUND

On July 31, 2023, at 2:11:46 a.m., Defendant Londregan drove a marked squad car to the scene of a traffic stop along the shoulder of Interstate 94 in Minneapolis, Hennepin

County, Minnesota. (Plaintiff's Complaint, ECF #1 at ¶ 8). Two additional Minnesota State Patrol troopers, Defendant Seide and a second trooper (hereinafter "Trooper Doe"), were already on the scene and parked behind a silver Ford Fusion driven by Decedent Cobb. (*Id*. at ¶ 9). Defendant Seide originally stopped Decedent Cobb twenty minutes earlier for driving at night without his lights on. (*Id*. at ¶ 11). When Defendant Londregan arrived on scene, Defendant Seide informed him that Decedent Cobb was wanted for the violation of a protective order in Ramsey County, though there was no outstanding arrest warrant in that case. (*Id*. at ¶ 13). A short time later, Defendant Seide informed Trooper Doe and Defendant Londregan that Ramsey County wanted Decedent Cobb arrested and brought to jail. (*Id*. at ¶ 16).

Thereafter, Defendant Seide approached the driver's side of Decedent Cobb's vehicle while Defendant Londregan approached the passenger side, and Trooper Doe positioned himself behind Defendant Seide near the rear of the vehicle. (*Id*. at ¶ 17). At this point, Decedent Cobb's vehicle was in park with its doors locked and both front windows rolled down. (*Id*. at ¶ 18). Defendant Seide told Decedent Cobb that he needed to exit the vehicle because they had "some stuff to talk about" regarding Ramsey County. (*Id*. at ¶ 19). Decedent Cobb responded by asking why he was being asked to step out of his vehicle. (*Id*. at ¶ 19). Defendant Seide again told Decedent Cobb that they had "stuff to talk about," but did not divulge a reason for ordering Decedent Cobb out of the vehicle. (*Id*. at ¶ 20). Defendant Seide further confirmed that Decedent Cobb was not subject to an arrest warrant. (*Id*. at ¶ 21).

2

Things continued this way with Defendant Seide telling Decedent Cobb that he needed to step out of the vehicle to talk and Decedent Cobb asking why until Defendant Seide asserted that Decedent Cobb was now subject to a lawful arrest. (*Id*. at ¶¶ 22, 23, & 24). Throughout the one-minute exchange, Decedent Cobb's hands were in the air in full view of the troopers, including Defendant Seide and Defendant Londregan, as he gestured while talking and his vehicle remained in park. (*Id*. at ¶ 25). Furthermore, Decedent Cobb's hands were not touching the steering wheel or gear shifter, and he had not stepped on the brake. (*Id*. at ¶ 26).

Just as Defendant Seide told Decedent Cobb that he was under arrest, Defendant Londregan moved his hand into the inside of the passenger door, unlocked the vehicle's doors, and began opening the passenger-side door. (*Id*. at ¶ 27). While Defendant Londregan was opening the door, Decedent Cobb placed his foot on the brake and moved his hand to the transmission shift and, when Defendant Londregan pulled the passenger door fully open, Decedent Cobb shifted the vehicle into drive and took his foot off the brake. (*Id*. at ¶ 28). At this point, Defendant Seide grabbed the driver's side door handle and began opening the door while Decedent Cobb's vehicle began to slowly move several feet forward. (*Id*. at ¶ 29). Both Defendant Seide and Defendant Londregan, who were fully outside of the vehicle, took steps forward to remain at the vehicle's side as Defendant Seide opened the driver's side door wider. (*Id*. at ¶ 30).

Defendant Seide then leaned his torso inside the vehicle and began to reach over Decedent Cobb toward his seatbelt, while Defendant Londregan remained on the passenger side and reached for his firearm. (*Id*. at ¶ 31). At that moment, Decedent Cobb stepped on

3

the brake, stopping the vehicle's forward movement and Defendant Londregan drew his firearm and pointed it directly at Decedent Cobb. (*Id*. at ¶ 32). Defendant Londregan then leaned his torso inside the car, pointed his gun at Decedent Cobb's body, and loudly and aggressively yelled, "Get out of the car now!" (*Id*. at ¶ 34). As Defendant Londregan said the word "car", Defendant Seide physically grabbed at Decedent Cobb and Decedent Cobb took his foot off the brake causing the vehicle to begin slowly moving forward. (*Id*. at ¶ 35). Within several tenths of a second after Defendant Londregan yelled the word "now," Defendant Londregan fired his handgun twice at Decedent Cobb's torso, striking him both times. (*Id*. at ¶ 35).

After Decedent Cobb was shot, his vehicle increased its acceleration forward as Defendant Seide's torso remained inside the vehicle. (*Id*. at ¶ 36). Defendant Seide and Defendant Londregan continued stepping forward to keep pace with Decedent Cobb's vehicle for six to ten (6-10) feet until they both lost their footing and fell to the ground. (*Id*. at ¶ 37). Decedent Cobb's vehicle then proceeded down Interstate 94. (*Id*. at ¶ 38). Defendant Seide and Defendant Londregan ran to their squad cars before driving after Decedent Cobb's vehicle, which had traveled approximately one-quarter mile down the interstate and came to a stop after colliding with a concrete median. (*Id*. at ¶ 39). Defendant Seide then drove his squad car into Decedent Cobb's vehicle before the Defendants removed him, assessed his gunshot wounds, and attempted life-saving measures without success. (*Id*. at ¶ 40).

Following the shooting, multiple law enforcement agencies and emergency medical services ("EMS") responded, and EMS pronounced Decedent Cobb dead at the scene. (*Id*.

at ¶¶ 41 & 42).  An autopsy determined that Decedent Cobb's cause of death was "multiple gunshot wounds."  (*Id*. at ¶ 43).  The medical examiner located two gunshot wounds, each of which passed through Decedent Cobb's torso, and the gunshots which caused his death were those fired by Defendant Londregan.  (*Id*. at ¶ 44).

On January 24, 2024, a criminal complaint was filed against Defendant Londregan charging him with: (1) second degree unintentional murder—while committing a felony; (2) first degree assault—great bodily harm; and (3) second degree manslaughter—culpable negligence creating unreasonable risk.  Plaintiff filed her Complaint in the instant matter on April 17, 2024.  As of the date of this filing, Defendant Seide has not been charged with any crimes related to the incident at issue.

## STANDARD

"A federal district court has 'the inherent power to stay the proceedings of an action, so as to control [its] docket, to conserve judicial resources, and to provide for the just determination of cases which pend before [it].'"  *Ruszczyk as Trustee for Ruszczyk v. Noor*, 349 F. Supp. 3d 754, 759 (D. Minn. 2018) (alteration in original) (quoting *Armstrong v. Mille Lacs Cty. Sheriffs Dep't*, 112 F. Supp. 2d 840, 843 (D. Minn. 2000)).  However, "[t]he Constitution 'does not ordinarily require a stay of civil proceedings pending the outcome of criminal proceedings.'"  *Id*. at 759 (quoting *SEC v. Dresser Indus., Inc.*, 628 F.2d 1368, 1375 (D.C. Cir. 1980)).  As such, "[i]n making this determination, a Court must consider the particular circumstances, and the competing interests, that are involved in each case."  *Id*. (quoting *Fid. Nat'l Title Ins. Co. of New York v. Nat'l Title Res. Corp.*, 980 F. Supp. 1022, 1024 (D. Minn. 1997)).  "[T]o warrant a stay, defendant must make a strong showing

either that the two proceedings are so interrelated that he cannot protect himself at the civil trial by selectively invoking his Fifth Amendment privilege[] or that the two trials will so overlap that effective defense of both is impossible." *Koester v. Am. Republic Invs., Inc.*, 11 F.3d 818 (8th Cir. 1993) (internal citation omitted).  In addition to considering the potential burden on a defendant's Fifth Amendment rights, courts may consider the following factors where relevant:

> (1) the interest of the plaintiffs in proceeding expeditiously with this litigation or any particular aspect of it, and the potential prejudice to plaintiffs of a delay;
> (2) the burden which any particular aspect of the proceedings may impose on defendants;
> (3) the convenience of the court in the management of its cases, and the efficient use of judicial resources;
> (4) the interests of persons not parties to the civil litigation; and
> (5) the interest of the public in the pending civil and criminal litigation.

*Ruszczyk*, 349 F. Supp. 3d at 759 (quoting *Fid. Nat'l Title Ins. Co. of New York*, 980 F. Supp. at 1024).

## ARGUMENT

### I.  Defendant Seide's Fifth Amendment interests do not support a stay.

A stay is not justified in this matter because Defendant Seide is not facing any charges stemming from the incident at issue in Plaintiff's Complaint.

"[T]he strongest case for deferring civil proceedings until after completion of criminal proceedings is where a party under indictment for a serious offense is required to defend a civil or administrative action involving the same matter." *Dresser*, 628 F.2d at 1375–76.  Conversely, "[p]re-indictment requests for a stay of civil proceedings are

generally denied." *Fid. Nat'l Title Ins. Co. of New York*, 980 F.Supp. at 1025 (quoting *United States v. Private Sanitation Indus. Ass'n*, 811 F. Supp. 802, 805 (E.D.N.Y. 1992)).

Here, Defendant Seide is not facing criminal charges for his role in the incident at issue. As such, Defendant Seide is not forced to choose between defending himself in the civil matter or the criminal matter, nor is he facing overlapping criminal and civil matters such that defense of both is impossible. *See Id.* ("[S]ince Holstad has not been indicted, he is not 'encumbered with the burden of developing simultaneously both criminal and civil defenses.'" (quoting *In re Mid–Atl. Toyota Antitrust Litigation*, 92 F.R.D. 358, 360 (D. Md. 1981)). Consequently, Defendant Seide's request for a stay should be denied. *See id.* ("[P]re-indictment requests for a stay of civil proceedings are generally denied." (quoting *Private Sanitation Indus. Ass'n*, 811 F. Supp. at 805).

Defendant Seide argues that he "may" have Fifth Amendment interests at stake in this matter and that he should not be forced to choose between his Fifth Amendment rights and forfeiting this lawsuit. However, as explained above, Defendant Seide is not a criminal defendant. As such, Defendant Seide's general assertion that he "may" have Fifth Amendment interests at stake is insufficient to justify a stay of this matter. *See Koester*, 11 F.3d at 823 ("[A] civil defendant cannot hide behind a blanket invocation of the Fifth Amendment privilege.").

Additionally, Defendant Seide argues that it is "immaterial" that Defendant Seide is not a criminal defendant. In support of this assertion, Defendant Seide cites two cases seemingly for the proposition that a Court may stay civil proceedings in which some civil defendants are not facing criminal prosecution. Notably, however, in those cases, the courts

did not grant stays upon motion of a non-criminal defendant alone.  Rather, those courts granted stays when all of the civil defendants, including those facing criminal prosecution, moved for the proceedings to be stayed.  *See*, *e.g.*, *Chagolla v. City of Chicago*, 529 F. Supp. 2d 941 (N.D. Ill. 2008) (granting a limited stay where all defendants, including those facing criminal prosecution, moved for a stay); *Tr. of Plumbers and Pipefitters Nat'l Pension Fund v. Transworld Mech., Inc.*, 886 F.Supp. 1134, 1140 (S.D.N.Y. 1995) (granting a stay where all defendants, including those facing criminal prosecution, moved for a stay). Here, only Defendant Seide has moved for a stay.  As discussed above, Defendant Seide is not a criminal defendant and his Fifth Amendment interests do not support a stay. Moreover, Defendant Seide cannot request a stay on behalf of Defendant Londregan, as it is axiomatic that Defendant Seide does not have standing to assert Defendant Londregan's Fifth Amendment rights.[1]

Ultimately, Defendant Seide's request for a stay should be denied because Defendant Seide is not a criminal defendant and faces no burden on his Fifth Amendment interests.

## II.    A stay is not warranted by the *Keating* factors.

As will be demonstrated below, a stay is not supported by the *Keating* factors, as Defendant raises multiple speculative arguments regarding such factors and this Court can take appropriate measures to reduce any potential burden to Defendant Seide.

---

[1] In fact, Defendant Londregan has filed a memorandum in partial opposition to Defendant Seide's motion for a stay.  *See* Defendant Londregan's Memorandum in Partial Opposition to Stay, ECF #22).

**a. Plaintiff's interests and the prejudice of delay.**

At the outset, a "[p]laintiff 'ha[s] a legitimate interest in the expeditious resolution of [his] case.'" *Ruszczyk*, 349 F. Supp. 3d at 760 (second and third alterations in original) (quoting *Tr. of Plumbers and Pipefitters Nat'l Pension Fund*, 88 F.Supp. at 1140). Moreover, "[w]itnesses relocate, memories fade, and persons allegedly aggrieved are unable to seek vindication or redress for indefinite periods of time." *Fid. Nat'l Title Ins. Co. of New York*, 980 F. Supp. at 1024 (alteration in original) (quoting *Sw. Marine, Inc. v. Triple A Mach. Shop, Inc.*, 720 F. Supp. 805, 809 (N.D. Cal. 1989)).

Here, Plaintiff has a strong interest in the expeditious resolution of her case and a stay has the potential to interfere with this interest. As previously mentioned, Defendant Londregan was charged for his role in this incident in January of this year. As such, there will likely be a considerable amount of time before Defendant Londregan is brought to trial. Following trial, if Defendant Londregan is convicted, he may seek appellate review of the conviction or even Supreme Court review. If the civil matter is stayed pending resolution of the criminal matter, Plaintiff may not have the opportunity to vindicate her claims for years. This will undoubtedly have negative effects on her case. While Defendant Seide asserts that evidence collected by the BCA investigation will be preserved for the civil trial, this can only apply to physical and documentary evidence. However, there is no protection against the effect of time on potential witnesses, who may forget key details or be unavailable at the time Defendant Londregan's criminal case has concluded.

Consequently, Plaintiff has a strong interest in the expeditious resolution of her case which cannot be adequately protected if a stay is ordered.

**b. Burden on Defendant Seide**

Defendant Seide asserts that he will be burdened if a stay is not ordered because he does not have access to investigatory information critical to his defense. However, in making this blanket assertion, Defendant Seide does not identify or even attempt to describe any information which he does not have access to that creates a burden on his defense of the civil matter. To the contrary, Defendant Seide participated in the incident described in the Complaint, is aware of policies and training employed by the Minnesota State Patrol, and can testify to his personal experience and observations.

Moreover, assuming that the lack of a stay may impose a slight burden on Defendant Seide, this Court can put conditions or parameters on the discovery process to mitigate or eliminate such burden. For example, in *Fid. Nat'l Title Ins. Co. of New York v. Nat'l Title Res. Corp.*, this Court previously explained that limitations could be placed on civil discovery to protect a defendant who was under criminal investigation. 980 F.Supp. at 1025. This Court determined that the entry of an order which would seal those portions of the defendant's deposition testimony that related to matters involved in the anticipated criminal investigation struck the proper balance between the competing forces in tension. *Id*.

Consequently, it is well within this Court's discretion to fashion an order that addresses any legitimate burdens placed on Defendant Seide without staying the case. As one example, the parties could stipulate to, or Defendant Seide could move this Court for, the entry a protective order. Under Rule 26(c) of the Federal Rules of Civil Procedure, the Court "may, for good cause, issue an order to protect a party or person from annoyance,

10

embarrassment, oppression, or undue burden or expense."  Notably, the Rule expressly contemplates that a court may enter an order imposing one or more conditions or limitations on discovery in order to safeguard a party, including but not limited to "requiring that a deposition be sealed and opened only on court order."  Fed. R. Civ. P. 26(c)(1).[2]

As such, the alleged burden on Defendant Seide does not justify a stay in this matter, and any actual burden can be addressed by the parties and/or this Court through a protective order.

### c. Convenience of the Court

Defendant Seide asserts that a stay will promote efficiency because (1) this Court would have the benefit of transcripts and rulings in the criminal action, (2) the resolution of the criminal case might reduce the scope of discovery in this case or simplify the issues, and (3) would prevent the need for this Court to adjudicate several privilege issues. Notably, however, Defendant Seide fails to explain how the criminal trial of Defendant Londregan will produce rulings simplifying issues related to Defendant Seide or how rulings on Defendant Londregan's potential privileges will prevent the need to determine any such privileges held by Defendant Seide.  Simply put, such issues affecting Defendant Seide cannot be ruled upon in a criminal trial in which he is not a Defendant.  As such,

---

[2] Crucially, Plaintiff would emphasize that she is not conceding Defendant Seide would be entitled to a protective order or any limitations referenced above.  Rather, Plaintiff simply references the powers of this Court to address any potential burden on Defendant Seide. Ultimately, whether such measures are appropriate would require a showing of good cause and sufficient need.

11

rather than promoting efficiency, a stay in this matter would simply postpone the need to adjudicate many of these issues as they relate to Defendant Seide.

### d. Interests of non-parties.

Plaintiff asserts that Decedent Cobb's family and friends have a unique interest in the expeditious outcome of the civil case. Decedent Cobb was a beloved father, son, brother, and friend to many in the Minneapolis community. As such, those members of Decedent Cobb's family who are not represented by the estate and his friends have an interest in the pursuit of justice on behalf of Decedent Cobb. Moreover, because Defendant Seide is not facing criminal prosecution for the incident alleged in the Complaint, this civil matter is the only mechanism by which such individuals can see Defendant Seide held accountable for his role in Decedent Cobb's death.

### e. Interests of the public.

Defendant Seide asserts that the public has an interest in the untainted and orderly prosecution of Defendant Londregan. Defendant Seide further asserts that filings in the civil case could be publicized and affect potential criminal jurors. Plaintiff would note that the public also has an interest in the expeditious resolution of civil litigation. *See Ruszcyzyk*, 349 F. Supp. 3d at 765 ("[The] public has an interest in the prompt disposition of civil litigation, an interest that has been enacted into positive law via the Civil Justice Reform Act of 1990." (quoting *Chagolla*, 529 F. Supp. 2d at 946–47)).

Furthermore, as noted above, there are multiple mechanisms which this Court could utilize to safeguard discovery and filings in this matter, and to ensure the orderly progression of the case. Additionally, it is worth noting that the potential issues identified

by Defendant Seide arise in the context of Defendant Londregan's criminal trial.  However, Defendant Seide, who is not a criminal defendant, is the only Defendant in this case to move for a stay.[3]  It simply cannot be argued that the public has a greater interest in a stay of this civil matter than the Defendant Londregan, the party actually facing criminal prosecution.

Ultimately, the *Keating* factors do not support a stay of this civil action and Defendant Seide's motion for the same should be denied.

## III.  Plaintiff does not oppose Defendant's Seide's request for an extension of time to answer or respond to the Complaint.

As represented by Defendant Seide, Plaintiff does not oppose the request for an extension of time to answer or respond to the Complaint.  Because Plaintiff asserts that Defendant Seide is not entitled to a stay in this matter, Plaintiff believes a 30-day extension should be granted from the date that this Court issues its ruling on the motion for a stay.

## CONCLUSION

Based on the foregoing, Plaintiff respectfully asks this Court to deny Defendant Seide's motion for a stay of this matter, as Defendant Seide is not a criminal defendant, his Fifth Amendment interests do not support a stay, and the *Keating* factors do not support a stay.  On the other hand, Plaintiff does not oppose Defendant Seide's request for an extension of time to answer or respond to the Complaint.

---

[3] As noted above, Defendant Londregan has actually filed a memorandum in partial opposition to Defendant Seide's motion for a stay.

Respectfully submitted, this 6th day of May, 2024


/s/ Bakari T. Sellers
Bakari T. Sellers* (S.C. Bar No. 79714)
Mario A. Pacella* (S.C. Bar No. 68488)
Amy E. Willbanks* (S.C. Bar No. 69331)
Matthew B. Robins* (S.C. Bar No. 103685)
Strom Law Firm, LLC
6923 North Trenholm Road, Suite 200
Columbia, SC  29206
T: (803) 252-4800
bsellers@stromlaw.com
mpacella@stromlaw.com
awillbanks@stromlaw.com
mrobins@stromlaw.com

*Admitted Pro Hac Vice


F. Clayton Tyler (MN Bar No. 11151X)
F. Clayton Tyler, P.A.
331 2nd Avenue S.
Minneapolis, MN 55401
T: (612) 333-7309
fctyler@fctyler.com


Harry M. Daniels** (GA Bar No. 234158)
The Law Offices of Harry M. Daniels, LLC
4571 Best Road, Ste 490
Atlanta, GA  30337
T: (678) 664-8529
daniels@harrymdaniels.com

**Pro Hac Vice Application Forthcoming


14