# United States Court of Appeals
## For the Eighth Circuit

---

No. 24-3412

---

Nyra Jean Miller-Fields, individually and as Personal Representative of the Estate of Ricky Cobb, II

*Plaintiff - Appellant*

v.

Ryan Londregan

*Defendant - Appellee*

Brett Seide

*Defendant*

---

No. 25-1170

---

Nyra Jean Miller-Fields, individually and as Personal Representative of the Estate of Ricky Cobb, II

*Plaintiff - Appellant*

v.

Brett Seide

*Defendant - Appellee*

Ryan Londregan

*Defendant*

_____

Appeal from United States District Court
for the District of Minnesota

_____

Submitted: March 18, 2026
Filed: July 7, 2026

_____

Before COLLOTON, Chief Judge, GRUENDER and KOBES, Circuit Judges.

_____

KOBES, Circuit Judge.

Minnesota State Troopers stopped Ricky Cobb, II for driving without his headlights on. Things escalated when Cobb, who was wanted for violating a protective order, refused commands to exit his car and instead put the car in drive. A trooper shot and killed him seconds later. Nyra Miller-Fields, personal representative of Cobb's estate, sued under 42 U.S.C. § 1983, alleging unreasonable seizure and excessive force in violation of the Fourth and Fourteenth Amendments. Relying on body and dash camera footage, the district court[1] granted the troopers' motion to dismiss based on qualified immunity. We affirm.

## I.   Background

We review *de novo* the district court's grant of the motion to dismiss and accept "as true all factual allegations in the light most favorable to [Miller-Fields]." *Waters v. Madson*, 921 F.3d 725, 734 (8th Cir. 2019); *see* Fed. R. Civ. P. 12(b)(6).

_____

[1]The Honorable Nancy E. Brasel, United States District Judge for the District of Minnesota.

When video evidence is "embraced by the complaint" and its authenticity is not challenged, we may consider it so far as it "blatantly contradict[s]" the alleged facts. *Young v. Keyes*, 176 F.4th 573, 577 (8th Cir. 2026) (citations omitted). Miller-Fields does not dispute the authenticity of the videos, so we accept the complaint's factual allegations and view them in the light most favorable to Miller-Fields, except where the videos "disprove [Miller-Fields's] account of events."[2] *Id.*

Trooper Brett Seide pulled Cobb over around 1:52 a.m. on July 31, 2023. Right away, Seide received an alert on his in-car computer that Cobb was wanted for a felony protective order violation in Ramsey County and instructions to "hold subject and contact Ramsey County Sheriff's Office." Seide told non-defendant Trooper Garrett Erickson, who arrived at the scene at 1:53 a.m., the date of the protective order and said that it "expires 7-31-2026 . . . that's today." He radioed dispatch and asked them to contact Ramsey County Sheriff's Office.

Trooper Ryan Londregan arrived around 2:11 a.m. Seide told him about the protective order violation and that Cobb was "a little sketchy" and "amped." Seide then received the call from Ramsey County. The videos capture Seide's half of the conversation, including him saying "we'll get him arrested" and his questions about where and under what case number he should book Cobb. After the call, Seide told Londregan and Erickson that Ramsey County wanted Cobb arrested.

The three approached Cobb's car at 2:15 a.m. It was parked on the shoulder of the interstate with locked doors and the front windows down. Seide went to the driver's side, Londregan to the passenger's side, and Erickson stood near the back of the car. Seide repeatedly ordered Cobb to step out of the car and give him the keys. Cobb refused and asked if there was a warrant for his arrest. Seide told him there was no warrant, but after Cobb failed to comply, he announced "this is now a lawful arrest."

---

[2]She objects that the videos were improperly produced by a subpoena before discovery. But the troopers attached the video to their motion to dismiss before a subpoena was served, so her argument is without merit.

On the word "arrest," Londregan moved his hand inside the passenger-side door, unlocked it, and started to open it. At the same time, Trooper Seide opened Cobb's driver-side door. Cobb put his foot on the brake, moved his hand to the transmission, and shifted the car into drive. The car jerked forward and Seide and Londregan moved with it. Seide then leaned into the car, reaching towards Cobb's seatbelt buckle. The car stopped and Londregan pulled his gun and ordered, "Get out of the car now." In the same instant, at 2:17 a.m., the brake lights went off. The car moved forward again with Seide's upper body still fully inside. Trooper Londregan fired twice into Cobb's torso.

The car accelerated, knocking Seide and Londregan to the ground. The troopers returned to their patrol cars and caught up to Cobb, whose car was moving slowly along the median about a quarter mile down the interstate. Seide decelerated and ran into the rear-passenger side while Londregan decelerated and hit the front passenger side, bringing Cobb's car to a stop. The troopers pulled an unresponsive Cobb from the car and unsuccessfully tried to resuscitate him.

## II.    Qualified Immunity Analysis

To determine whether the troopers are entitled to qualified immunity on a motion to dismiss, "we must determine whether the alleged facts demonstrate that [their] conduct violated a constitutional right, and whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Groenewold v. Kelley*, 888 F.3d 365, 370–71 (8th Cir. 2018) (cleaned up). "[T]he qualified immunity determination is specific to each" trooper. *Cannon v. Dehner*, 112 F.4th 580, 588 (8th Cir. 2024).

## A. Unreasonable Seizure

Miller-Fields alleges the troopers unreasonably seized Cobb when they extended the stop and decided to arrest him. But since neither of these seizures were

-4-

unreasonable, Troopers Seide and Londregan did not violate a constitutional right and are entitled to qualified immunity.

Miller-Fields first argues that both troopers unreasonably seized Cobb by "unnecessarily extend[ing]" the stop without probable cause.[3]  This is the wrong legal standard.  Officers only need "reasonable suspicion of criminal activity" to extend a stop, *United States v. Allen*, 43 F.4th 901, 907 (8th Cir. 2022), and Miller-Fields concedes there was reasonable suspicion that Cobb violated a protective order, *see* Compl. at 10 ("Neither Defendant Londregan nor Defendant Seide had reasonable suspicion that Decedent Cobb had committed any crime *other than a protective order violation*." (emphasis added)).  The videos confirm that both troopers knew about the felony protective order violation and that it was still active, showing they had reasonable suspicion of criminal activity to justify the stop's extension.  *See United States v. Hensley*, 469 U.S. 221, 232 (1985).  And they extended the stop only for the amount of time it took to hear back from Ramsey County and attempt the arrest.  *Allen*, 43 F.4th at 907 ("[O]fficers may continue the stop only for the time necessary to attend to the stop's mission and related safety concerns." (cleaned up)).

Nor did Seide and Londregan "unreasonably seize[] Cobb when they decided to arrest him."[4]  "A warrantless arrest is consistent with the Fourth Amendment if it

---

[3]The troopers argue that the complaint did not allege a standalone unconstitutional-extension claim.  But it alleged the length of the stop and claimed the troopers lacked probable cause.  Miller-Fields argued that the stop was unconstitutionally extended in her opposition to the motion to dismiss, and the district court addressed that argument in its order.  We likewise address it here. *See Cook v. George's, Inc.*, 952 F.3d 935, 938 (8th Cir. 2020) ("We must construe the complaint 'liberally.'" (citation omitted)); *see also United States v. Williams*, 504 U.S. 36, 42 (1992) (we can consider issues decided "by the court[] below" (citation omitted)).

[4]Miller-Fields does not argue on appeal that the troopers' attempts to pull Cobb out of his car during the arrest or ramming his car were unconstitutional

-5-

is supported by probable cause." *Borgman v. Kedley*, 646 F.3d 518, 522 (8th Cir. 2011). The video evidence shows that Seide knew Cobb violated a protective order. Miller-Fields argues that if the troopers truly had probable cause they would have arrested Cobb immediately on receiving the alert because Minnesota is a "shall arrest" state. *See* Minn. Stat. § 518B.01, subdiv. 14(e). But this is a misreading of Minnesota's statute, which only mandates that "[a] peace officer shall arrest without a warrant and take into custody a person whom the peace officer has probable cause to believe has violated" a protective order. *Id.* Failure to arrest Cobb "right then" did not divest the troopers of probable cause a few moments later.

Based on the initial alert and instructions from the Ramsey County Sheriff's Office, Trooper Seide had probable cause that Cobb had "committed or [was] committing an offense" by violating the protective order. *Willis v. Mills*, 141 F.4th 905, 911 (8th Cir. 2025) (citation omitted). Trooper Seide asked dispatch to contact Ramsey County and, minutes later, he received a call. Though the video provides only one side of the call, the context and Seide's responses make it clear that Ramsey County instructed him to arrest Cobb and book him. And Trooper Londregan was entitled to rely on Seide's decision to arrest and reasonably did so based on the alert and what he heard of Siede's conversation with Ramsey County. *See Wolterman v. Syverson*, 164 F.4th 1086, 1092 (8th Cir. 2026) ("An assisting officer may rely on the probable cause determination and follow the directions of an officer who is directing the arrest as long as the reliance is reasonable." (citation omitted)).

## B. Excessive Force

"[R]egardless of whether [Miller-Fields] has articulated a constitutional violation" by Trooper Londregan for shooting Cobb, *Hess v. Ables*, 714 F.3d 1048, 1051 (8th Cir. 2013), Londregan is entitled to qualified immunity because Miller-Fields has not shown that Cobb's rights in the specific context of this case were

---

seizures. *See Davenport v. City of Little Rock*, 142 F.4th 1036, 1040 n.7 (8th Cir. 2025) (claims alleged in the complaint but not addressed on appeal are waived).

"sufficiently clear that a reasonable official would understand that what he [was] doing violate[d] that right," *Jones v. McNeese*, 675 F.3d 1158, 1161 (8th Cir. 2012) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

Miller-Fields "bears the burden of proving that the law was clearly established." *Hess*, 714 F.3d at 1051. She points us first to *Tennessee v. Garner*, 471 U.S. 1 (1985), which she says clearly establishes that "[a]n officer may not use deadly force against a fleeing suspect unless the suspect poses an immediate and significant threat of serious injury." But this general principle is too broad to clearly establish a constitutional violation here. *See Zorn v. Linton*, 146 S. Ct. 926, 930 (2026) (per curiam) ("The relevant precedent must define the right with a 'high degree of specificity,' so that 'every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply.'" (citation omitted)). *Garner* is not "a case where an officer acting under similar circumstances was held to have violated the Constitution." *Id.* (cleaned up).

And cases more factually similar than *Garner* offer little help. In *Molina-Gomes v. Welinski*, 676 F.3d 1149, 1151–53 (8th Cir. 2012), we found that deadly force was not excessive where a suspect knocked and dragged a police officer while trying to escape in his car. This was because "[t]he reckless driving by [the suspect] in his attempt to escape was a danger to the arresting police officers and to any drivers on the roadway." *Id.* at 1152; *see also Harmon v. City of Arlington*, 16 F.4th 1159, 1164–65 (5th Cir. 2021) (holding that deadly force was not excessive because officer who was clinging to an accelerating car could reasonably believe that he was at serious risk of harm). Miller-Fields has not shown it was clearly established that deadly force violates the Fourth Amendment if used to protect an officer reaching inside a suspect's car when the suspect shifts the car into drive and the car begins to move. *See Harmon*, 16 F.4th at 1167 (noting that "whether it is unreasonable for an

-7-

officer to use deadly force when he has become an unwilling passenger on the side of a fleeing vehicle" was not clearly established).[5]

Miller-Fields next says that *Wallace v. City of Alexander*, 843 F.3d 763 (8th Cir. 2016), and *Moore v. Indehar*, 514 F.3d 756 (8th Cir. 2008), hold that officers may not seize "unarmed, nondangerous suspects by shooting them dead." *Wallace*, 843 F.3d at 769 (cleaned up). But "a car . . . may be used as a deadly or dangerous weapon," *United States v. Yates*, 304 F.3d 818, 823 (8th Cir. 2002), so it was not clearly established that Cobb was unarmed or nondangerous where his car was moving with a trooper partially inside. Similarly, Miller-Fields argues that deadly force is justified only "when the person with the instrument evinces some intent to use it in a way to cause harm." She points to cases involving suspects with guns, arguing we have found force unreasonable against an armed suspect who did not raise his gun or otherwise appear ready to shoot. *See Nance v. Sammis*, 586 F.3d 604 (8th Cir. 2009); *Wilson v. City of Des Moines*, 293 F.3d 447 (8th Cir. 2002). But those cases do not clearly establish that a reasonable officer could not perceive Cobb's actions as evincing an intent to harm the troopers. *Cf. Sykes v. United States*, 564 U.S. 1, 10 (2011) (cars can "create serious potential risks of physical injury to others" when used as a means of escape), *overruled by*, *Johnson v. United States*, 576 U.S. 591 (2015).

She also argues it is clearly established that officers must provide a warning before using deadly force. *See Garner*, 471 U.S. at 11–12. But *Garner* did not establish an absolute rule. Rather, it requires officers to provide a warning "where feasible." *Id.* And we have held that a warning is less likely to be feasible "in a

---

[5] Miller-Fields argues whether Cobb was attempting to flee is a question of fact, alleging that Seide's attempt to pull Cobb out of the car was what caused him to take his foot off the brake the second time. "But even if [Cobb's] motives were innocent, a reasonable officer on the scene could have interpreted [his] actions as resistance." *Loch v. City of Litchfield*, 689 F.3d 961, 966 (8th Cir. 2012). And she would still need to provide a case clearly establishing that Londregan's actions violated the Constitution.

high-pressure situation," like this one, "that requires a split-second judgment." *Morgan-Tyra v. City of St. Louis*, 89 F.4th 1082, 1086 (8th Cir. 2024). Without a case on point, Miller-Fields has not shown that Trooper Londregan violated a clearly established right if he did not issue a warning before shooting Cobb.

Finally, Miller-Fields alleges in her Complaint that Troopers Seide and Londregan violated the Fourth Amendment by using excessive force to "ram[]" Cobb's car. She says that "no facts . . . conclusively established that Cobb was ever fleeing." But her argument and the complaint's allegation that the troopers "ramm[ed] Decedent Cobb's stopped vehicle" are blatantly contradicted by the video evidence. The dash camera footage shows that Cobb sped off the shoulder of the road and turned into traffic. When the patrol cars caught up to him, his car was still moving forward next to the median. Seide stopped Cobb's car by decelerating and bumping into the back corner while Londregan slowed to bump the front corner.

Relying on *Mayard v. Hopwood*, 105 F.3d 1226 (8th Cir. 1997), Miller-Fields argues that Seide knew that Cobb was incapacitated, so his use of force was not objectively reasonable. But *Mayard* is inapposite because it involved the use of force after the plaintiff was already subdued and in police custody. *Id.* at 1228 (not objectively reasonable for officer to slap, punch, and demean a fully restrained suspect). Here, Cobb's car was still moving forward after having sped away from the troopers onto a busy highway, so it posed a threat to safety. Seide and Londregan's use of force was no greater than necessary to stop Cobb's vehicle, and under the totality of the circumstances, it was objectively reasonable. *See Westwater v. Church*, 60 F.4th 1124, 1128 (8th Cir. 2023) (totality of the circumstances inquiry includes "whether the suspect poses an immediate threat to the safety of the officer or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989))).

-9-

-10-

### III.    Conclusion

We affirm the judgment of the district court.

_____

Appellate Case: 24-3412    Page: 10    Date Filed: 07/07/2026 Entry ID: 5658027